# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7972 | **DATE** | 1/21/2004 |
| **CASE TITLE** | Molton vs. Experian Information Solutions, Inc | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants Experian's motion for summary judgment (21-1). Experian's motion to strike plaintiff's responses to Experian's statement of facts is denied as moot (25-1). Judgment is entered in favor of defendant Experian Information Solutions, Inc.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 26 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 30 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | | |
| OR | courtroom deputy's initials | '04 JAN 25 PM 11:08 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SONNJA MOLTON,            )
                          )
            Plaintiff,    )
                          )
      v.                  )   Case No. 02 C 7972
                          )
EXPERIAN INFORMATION      )
SOLUTIONS, INC.,          )
                          )
            Defendant.    )

### MEMORANDUM OPINION AND ORDER

**DOCKETED**

MATTHEW F. KENNELLY, District Judge:

**JAN 2 6 2004**

Sonnja Molton sued Experian Information Solutions, Inc., CBC Credit Services, First National Bank of Marin ("FNBM"), and Marlin Integrated, claiming violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. Molton settled her claims against CBC Credit Services, FNBM and Marlin Integrated, and they were dismissed from the case on May 29, 2003. The remaining defendant, Experian, a credit reporting company, has moved for summary judgment on the ground that it did not report any inaccurate information about Molton's credit status. For the reasons stated below, the Court grants Experian's motion.

### Facts

The facts relevant to resolving this case are not in dispute. Molton has admitted most of the facts outlined by Experian in its Rule 56.1(a)(3) Statement of Material Facts, which we will

1



summarize.[1] Molton held a credit card issued by FNBM. Def.'s Facts ¶ 34. Molton's account became 30 days past due in July 2000; 60 days past due in August 2000; 90 days past due in September 2000; 120 days past due in October 2000; and 150 days past due in November 2000. *Id.* ¶ 36. FNBM "charged off" the account on December 16, 2000 in the amount of $702.28. *Id.* ¶¶ 35, 37. Molton owed the balance of $702.28 in full, and FNBM forwarded the balance to Allied Interstate, a collection agency. *Id.* ¶¶ 37-38.

Molton called Experian on November 8, 2001 and requested a copy of her credit file, which Experian sent to her that day. *Id.* ¶ 6. Molton called Experian on December 10, 2001, saying that the FNBM account was not hers. *Id.* ¶ 7. Experian sent a Consumer Dispute Verification ("CDV") to FNBM describing Molton's claim as "Consumer States: Not mine." *Id.* ¶ 8. On December 24, 2001, FNBM verified that Molton was liable for the account and that the account's status was correctly reported as charged-off in the amount of $702.28 after a lengthy delinquency. *Id.* ¶ 9. Experian claims[2] that it sent the results of its reinvestigation to Molton on January 2, 2002, within 30 days of Molton's request for an investigation. *Id.* ¶ 10.

In April 2002, Molton paid Allied Interstate $351.50 on the FNBM account. *Id.* ¶ 38. She called Experian on May 29, 2002 to request another copy of her credit file, which Experian

---

[1] Except where expressly stated otherwise, the facts summarized below were offered by Experian and admitted by Molton.

[2] In Molton's response to Experian's statement of facts, Molton disputed this claim, stating: "Plaintiff has insufficient information to agree or disagree with Defendant's Statement of Fact." Pl.'s Resp. to Def.'s Facts ¶ 10. Experian moved the Court to strike this and similar answers and deem the facts admitted. As will become apparent below, this and the other facts subject to the motion to strike are not essential to the outcome of the case. Because we are granting Experian's motion for summary judgment, Experian's motion to strike is denied as moot.

sent her that day. *Id.* ¶ 11. Molton contacted Experian via the Internet on July 10, 2002 and claimed that the FNBM account was paid. *Id.* ¶ 12. Experian sent a CDV to FNBM on July 10 describing Molton's claim as "Consumer States: Status Disputed" and "Consumer Claims: Paid." *Id.* ¶ 13. FNBM responded on July 25, 2002, asking Experian to "(1) change the date of [Molton's] last payment to April 2002; (2) reduce the 'recent balance' amount from $702.28 to $350.78; and (3) reduce the amount past due from $702 to $350." *Id.* ¶ 14. But FNBM confirmed that Experian was correctly reporting the account as a charge-off after a lengthy delinquency. *Id.* Experian updated the account to reflect the changes requested by FNBM. *Id.* ¶¶ 17-18. Experian claims[3] it sent Molton the results of its reinvestigation on August 8, 2002, within thirty days of Molton's request for an investigation. *Id.* ¶ 15. The correction summary sent to Molton by Experian stated that the FNBM account was updated and that Molton had a right under the Fair Credit Reporting Act to have a consumer dispute statement placed on her credit report if she disagreed with the results of the reinvestigation. *Id.* ¶ 16. Molton never asked for a consumer dispute statement to be added to her credit report. *Id.* ¶ 31.

Molton applied in August 2002 for a residential mortgage of $73,742 with Countrywide Home Loans, Inc. *Id.* ¶ 44. Countrywide denied the application on September 6, 2002, checking off three reasons for the denial on a standard form: (1) "Garnishment, attachment, foreclosure, collection or judgment repossession or suit"; (2) "Delinquent credit obligations (past or present);

---

[3] Molton disputes this claim in her response to Experian's statement of facts and refers to ¶¶ 5 and 6 of Molton's statement of facts. However, nothing in ¶¶ 5 or 6 contradicts Experian's claim. Furthermore, Molton admits Experian's statement of fact in ¶ 16, and it seems that if ¶ 16 is true, ¶ 15 must be as well. Thus, Experian's statement of fact in ¶ 15 is deemed admitted. But the Court notes that we do not base our decision to grant Experian's motion for summary judgment on this fact.

3

and (3) "Insufficient income to support loan." *Id.* ¶ 47; Def.'s Ex. W. Countrywide Home Loans relied on a credit report received from Landsafe Credit. *Id.* ¶ 49; Def.'s Ex. W. The Landsafe Credit Merge Report relied upon by Countrywide stated that Molton had several collection accounts and delinquent credit obligations in addition to the FNBM account. *Id.* ¶ 49.

Molton claims, and Experian admits, that she filled out one of Experian's correction forms on September 23, 2002, and sent it to Experian. Pl.'s Facts ¶ 3. With it she enclosed a letter from Allied Interstate, dated April 30, 2002, stating: "the above referenced account has been settled in full. Therefore, there remains no further outstanding obligations pertaining to this account." *Id.*; Pl.'s Ex. A. Molton also included a copy of the money order showing proof of a $351.50 payment by Molton to Allied Interstate. *Id.*; Pl.'s Ex. G. Citibank denied Molton credit in a letter dated October 2, 2002. Def.'s Facts ¶ 52. And Molton contacted Experian again, this time via the Internet on October 9, 2002, to request a reinvestigation of the FNBM account, again claiming that the account was paid. *Id.* ¶ 19. That day, Experian sent a CDV to FNBM describing Molton's dispute as "Consumer States: Consumer states inaccurate info. / ACCT PD TO ALLIED INTERSTATE 04/04/02 PH 800-833-5313. VERIFY AND UPDATE." *Id.* ¶ 20. In her deposition, Molton stated that this summary of her dispute was reasonable and told FNBM everything it needed to know about the dispute. *Id.* ¶ 21. On October 22, 2002, FNBM advised Experian that Molton's account had an outstanding charge-off balance of $350.78. *Id.* ¶ 22. Experian sent a confirmation of the results of its investigation to Molton on November 7, 2002, thirty days after Molton requested the investigation. *Id.* ¶ 23.

However, on September 26, 2002, FNBM had sent Molton a letter in which it agreed to update her account's status to "paid charge-off/less than full balance" within 90 days. *Id.* ¶ 24.

4

Molton testified at her deposition that this designation with the comment of "Account legally paid in full for less than full balance" was what she had wanted. *Id.* ¶ 25. Molton filed her complaint on November 5, 2002. *Id.* ¶ 28. Molton's credit report reflected this agreed upon status by December 3, 2003, which was within 90 days of FNBM's September 26, 2002 letter. *Id.* ¶ 27; Def.'s Ex. K. As a result of the lawsuit, Experian sent another CDV to FNBM on December 6, 2002, saying "CONS STATES ACCT HAS BEEN PAID IN FULL SINCE APRIL 2002." *Id.* ¶ 29. "FNBM responded on December 19, 2002 that the account was correctly reported as 'settled/charge-off' with a comment that the 'account legally paid in full for less than full balance.'" *Id.* ¶ 30.

## Standard of Review

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must look at the evidence "as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The Court's "function is not to weigh the evidence but merely to determine if 'there is a genuine issue for trial.'" *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002) (citation omitted). To avoid summary judgment, the nonmovant "must produce more than a scintilla of evidence to support his position." *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001) (citation omitted).

## Analysis

Molton claims that Experian violated two sections of the FCRA and defamed her. Specifically, she claims Experian violated 15 U.S.C. § 1681i by (1) failing to conduct a reasonable reinvestigation into her claims of inaccurate reporting; (2) failing to provide FNBM with the letter Molton gave Experian from Allied Interstate saying Molton's account had been settled in full; (3) failing to review the Allied Interstate letter and proof of payment provided by Molton; (4) failing to delete inaccurate information from Molton's file after completing its reinvestigation; and (5) failing to note Molton's dispute in her credit file. Compl. ¶ 22. She also claims Experian violated 15 U.S.C. § 1681e(b) by "failing to employ and follow reasonable procedures to assure maximum possible accuracy of [her] credit report, information and file." *Id.* As a preliminary matter, the Court notes that because Molton admitted that she "never requested that a consumer dispute statement be added to her personal credit report," Def.'s Facts ¶ 31; Pl.'s Resp. to Facts ¶ 31, she cannot claim that Experian violated § 1681i(c) by failing to note Molton's dispute in her credit report. If a consumer is not satisfied with the results of the requested reinvestigation, "the consumer may file a brief statement setting forth the nature of the dispute." 15 U.S.C. § 1681i(b). "Whenever a statement of dispute is filed . . . the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer. . . ." 15 U.S.C. § 1681i(c). Because Molton concedes that she never filed a statement of dispute, Experian cannot be held liable for failing to append such a statement to her credit report.

Molton alleges other violations of § 1681i and § 1681e(b). Because the two sections involve different elements, the Court will address each section separately. *See Henson v. CSC*

*Credit Services*, 29 F.3d 280 (7th Cir. 1994). The Court will conclude by addressing Molton's defamation claim.

### 1. § 1681e – reasonable procedures to assure maximum possible accuracy

Under the FCRA, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). However, "[i]n order to state a claim under 15 U.S.C. § 1681e(b), a consumer must sufficiently allege 'that a credit reporting agency prepared a report containing 'inaccurate' information." *Henson*, 29 F.3d at 284 (citing *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)). In *Henson* the Seventh Circuit went on to explain that

> the credit reporting agency is not automatically liable even if the consumer proves that it prepared an inaccurate credit report because the FCRA "does not make reporting agencies strictly liable for all inaccuracies." A credit reporting agency is not liable under the FCRA if it followed "reasonable procedures to assure maximum possible accuracy," but nonetheless reported inaccurate information in the consumer's credit report.

*Id.* (quoting *Cahlin*, 936 F.2d at 1156, and holding "that, as a matter of law, a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's Judgment Docket, absent prior notice from the consumer that the information may be inaccurate"). But if the credit reporting agency can demonstrate that it only reported accurate information, "[the] court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency." *Cahlin*, 936 F.2d at 1156 (citation omitted). Experian, therefore, is correct that if the information it reported was accurate, it is entitled to summary judgment because, as a matter of law, Molton cannot establish a violation of § 1681e(b). *Id.*

7

Molton does not respond directly to Experian's claim that it is entitled to summary judgment because it published accurate information; instead Molton argues that there is a genuine issue as to the reasonableness of Experian's investigative procedures.

In *Cahlin v. General Motors Acceptance Corp.*, the Eleventh Circuit faced the same question as we do today: "whether a credit report containing derogatory information about an account which was charged off by a creditor for accounting purposes and which was later settled by the consumer for an amount less than the full balance due is 'accurate.'" *Id.* at 1158. Because the Seventh Circuit relied heavily on *Cahlin* in *Henson*, we will rely on *Cahlin* because it is directly on point. *Cahlin* involved a car loan extended to the plaintiff by General Motors Acceptance Corp. ("GMAC"). Cahlin leased a car from GMAC but decided to return it less than three months after he signed the lease. *Id.* at 1154. Several months later, GMAC sent notices to Cahlin, stating he owed $3,842.44 on the lease. *Id.* Cahlin paid $2,000 to GMAC's collection agency as full satisfaction for his debt, and GMAC discharged him of his debts previously owed. *Id.* at 1154-55. While the dispute was being settled, GMAC informed a credit reporting agency that Cahlin's account was delinquent and had been charged off by GMAC. *Id.* Cahlin's credit report thus reflected a charge off with a balance due of $3,843.44.[4] *Id.* After Cahlin paid $2,000 to GMAC's collection agency, Cahlin's credit report was changed to reflect a zero balance – but it continued to show that there had been a charge off. *Id.* When Cahlin saw his credit report, he filed a customer dispute, attaching a copy of the general release that GMAC had sent him. *Id.* The credit reporting agency did not alter Cahlin's credit report. *Id.* Cahlin complained to

---

[4] In *Cahlin* the court gave two different amounts – $3,842.44 and $3,843.44 – as the balance Cahlin owed GMAC. Because we do not know which amount is correct, in summarizing the facts of *Cahlin*, we use the different amounts as the Eleventh Circuit did.

8

GMAC, which sent a letter to the credit reporting agency requesting that the charge off be removed from Cahlin's report and replaced with a rating signifying that a debt had been paid within 30 days of billing. *Id.* The credit reporting agency replaced the charged-off rating with a debt paid within 30 days of billing rating, but it noted the charge off in the "previous history" section of Cahlin's credit report. *Id.* Cahlin complained to the credit reporting agency again. *Id.* The agency called GMAC, which instructed the agency to remove any reference to the charge off from Cahlin's credit report. *Id.* The credit reporting agency did so. *Id.*

To determine whether the credit report was accurate, the Eleventh Circuit first looked to "the intent of the creditor who transmitted the information about a particular account." *Id.* at 1158. The Eleventh Circuit concluded that GMAC had "intended the account to be reported as a 'paid charge off' or the equivalent" and that its instruction to delete the charge off from Cahlin's record was "largely motivated by a desire to mollify Cahlin and avoid potential litigation, not to correct any reporting errors." *Id.* Similarly, in this case FNBM had to charge off the account because Molton was delinquent and never paid the balance in full. Molton later settled the account with a collection agency for only half the amount she owed. We agree with the Eleventh Circuit that

> [i]n interpreting the meaning of "accuracy" within [§ 1681e(b)], we cannot conclude that a debt which has been charged off by the creditor and is later settled for an amount less than the original balance due should be reported without any derogatory references on a credit report. This information, which reflects the efforts required to collect a debt, is clearly of interest to potential creditors and would be effectively hidden by a credit report that treated the account as being in good standing.

*Id.* Molton's partial payment of the outstanding debt, though relinquishing her from liability for the full amount of the debt, did not constitute a payment in full. The description of the account

9

as charged off was both intended by FNBM and accurate. As in *Cahlin*, the fact that FNBM decided to amend Molton's credit report to include the statement "paid charge-off/less than full balance" did not render prior reports inaccurate, because the amendment represented FNBM's attempt to mollify Molton and did not reflect a change in FNBM's view of the status of her account. And, as in *Cahlin*, the lag time between April 30, 2002 when Allied Interstate recognized Molton's account as settled and August 8, 2002 when Molton's credit report reflected the reduced unpaid balance does not constitute a period of inaccuracy. Based on the undisputed facts, Molton's credit report at all times accurately reflected the status of her FNBM account as intended by FNBM. Experian, therefore, is entitled to summary judgment on Molton's § 1681e(b) claim.

2. *§ 1681i – duty to reinvestigate*

When a consumer informs a credit reporting agency that she disputes the "completeness or accuracy" of her credit report, "the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file . . . , before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer." 15 U.S.C. § 1681i(a)(1)(A). Molton claims that Experian did not conduct a reasonable reinvestigation of her complaints that her credit report was inaccurate. More specifically, she claims that it was unreasonable for Experian to rely on FNBM's communications without further investigation. The Seventh Circuit has recognized that "a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information." *Henson*, 29 F.3d at 287. The Court went on to explain that

[w]hether the credit reporting agency has a duty to go beyond the original source

> will depend, in part, on whether the consumer has alerted the reporting agency to
> the possibility that the source may be unreliable or the reporting agency itself
> knows or should know that the source is unreliable. The credit reporting agency's
> duty will also depend on the cost of verifying the accuracy of the source versus the
> possible harm inaccurately reported information may cause the consumer.

*Id.* In this case there is no dispute that Molton brought the alleged error to Experian's attention on multiple occasions. But Experian argues that the trier of fact need not weigh the above factors to determine whether it violated § 1681i, because a credit reporting agency cannot be found to have violated § 1681i if it reported accurate information.

In *Cahlin* the Eleventh Circuit agreed. "[A § 1681i] claim is properly raised when a particular credit report contains a *factual* deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry." *Cahlin*, 936 F.2d at 1160 (emphasis in original). The Eleventh Circuit found that "no additional amount of factual investigation by [the credit reporting agency] would have revealed any 'inaccuracy' in its reporting of the GMAC account because there was none," and thus the district court properly granted summary judgment to the credit reporting agency on Cahlin's § 1681i claim. *Id.*

As discussed in the previous section, Molton's account was accurately described as a charge off. As soon as Molton informed Experian on July 10, 2002, that she had settled the balance, Experian contacted FNBM and reduced the amount past due from $702 to $350 and continued to denote the account as charged off. This was accurate. As in *Cahlin*, Experian is entitled to summary judgment on Molton's § 1681i claim; "[n]o reasonable investigation on the part of [Experian] could have uncovered any inaccuracy in [Molton's] report because there was never any factual deficiency in the report." *Id.* Although Molton settled the account with a

11

collection agency, she paid only 50 cents on the dollar. In passing the FCRA, Congress recognized the need for "procedures that were not only 'fair and equitable to the consumer,' but that also met the 'needs of commerce' for accurate credit reporting." *Id.* at 1158 (quoting 15 U.S.C. § 1681). The statement on Molton's credit report that FNBM had charged off Molton's pervious balance was not only accurate; it was consistent with the dual purposes of the FCRA. *Id.*

### 3. Defamation

Experian argues that it is entitled to summary judgment on Molton's defamation claim because Experian accurately reported Molton's credit status and Molton cannot prove that Experian acted with "malice or willful intent to injure." 15 U.S.C. § 1681h(e). Under § 1681h(e) of the FCRA,

> no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to *false information furnished with malice or willful intent to injure such consumer.*

15 U.S.C. § 1681h(e) (emphasis added). We have already concluded that at all times Experian reported Molton's credit status accurately, which precludes a finding that "false information [was] furnished with malice or willful intent to injure [Molton]." *See Moline Experian Information Solutions, Inc.*, 289 F. Supp. 2d 956, 959 (N.D. Ill. 2003). Experian, therefore, is entitled to summary judgment on Molton's defamation claim.

### Conclusion

For the reasons stated above, the Court grants Experian's motion for summary

judgment [docket # 21-1]. Experian's motion to strike plaintiff's responses to Experian's statement of facts is denied as moot [docket # 25-1]. The Clerk is directed to enter judgment in favor of defendant Experian Information Solutions, Inc.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 21, 2004